[Civ. No. 2328. Fourth Appellate District.—September 11, 1939.]

C. S. CASNER, Respondent, v. SAN DIEGO TRUST & SAVINGS BANK (a Corporation), as Administrator, etc., Appellant.

Wirt Francis for Appellant.

Stone, Munkelt & Gazlay for Respondent.

GRIFFIN, J.—This is an action upon a rejected claim against the estate of Viola D. Herrick, deceased, and is based upon twelve (12) promissory notes all signed by Viola D. Herrick and her husband Robert T. Herrick. One note was for the sum of six thousand dollars ($6,000) dated April 18, 1909, due five years after date, payable to Irrigation Loan & Trust Company. One was for five thousand dollars ($5,000) dated April 3, 1911, due five years after date, payable to respondent. Ten were for the sum of $150 each, dated April 3, 1911, due respectively on the third days of each October and April thereafter and were interest notes on the $5,000 note last above described.

Respondent's husband, F. W. Casner, at the time of the execution of the notes here involved, was the president of

a loan corporation known as the Irrigation Loan & Trust Company, doing business at Kansas City, Missouri. Robert T. Herrick and appellant's testatrix, Viola D. Herrick, were, during the times referred to, husband and wife and resided at Kansas City, Missouri, where Robert T. Herrick was engaged in building operations which were customarily financed by the Irrigation Loan & Trust Company. Mr. Herrick prepared and offered for sale to the Irrigation Loan & Trust Company the note for the principal sum of $6,000 signed by himself and Viola D. Herrick, and made payable to the Irrigation Loan & Trust Company or order. The note was accompanied by a deed of trust made to secure it, signed by the Herricks, affecting certain lots in Indianapolis Place, an addition to Kansas City. Mr. Casner claims that this property was worth about $2,200. Casner's testimony is that the Irrigation Loan & Trust Company deemed itself unable to make this loan, but that he accepted the loan for his wife, and that the Irrigation Loan & Trust Company endorsed the note without recourse, in order to pass the title to her. The lots were unimproved and the proceeds of the loan were not used to improve them, as represented, but were expended for other purposes. On April 3, 1911, the Herricks executed direct to the respondent C. S. Casner the $5,000 note above described and the ten notes for $150 each. The $5,000 note, together with those given for the interest, were secured by a deed of trust of even date, affecting certain lots in Countryside Addition to Kansas City, Missouri.

The lots that were made security for the $6,000 loan turned out to be subject to certain prior trust deeds, one of which was foreclosed in March, 1911, in consequence of which the security was lost. There are endorsed in pencil in Mr. Casner's handwriting, as having been paid on this note, several sums. The last one was for $75 on March 25, 1917. The trust deed given to secure the $5,000 note with the annexed interest notes, was foreclosed in April, 1914, and $1,000 realized at the foreclosure sale, the property being bought in by one Lindberg, in reality for Mrs. Casner. The selling price was applied to settle mechanics' liens and tax delinquencies on the property and, according to respondent's claim, nothing remained to be applied on the debt. The trial court held that of this amount, to wit, $1,000, the costs and expenses of sale were $55, leaving a balance of $945, which

"should be treated as having satisfied each of these first five interest notes in full and having still left to defendant's credit a net balance of $99, applicable on the sixth interest note which fell due in the same month that the sale occurred, thereby reducing it to $51". No point has been raised on this appeal as to this ruling or order directing the application of the proceeds of the sale.

The evidence is to the effect that Viola D. Herrick lived in Kansas City with her husband until December, 1913, at which time she went to live with her father at Topeka, Kansas, where she remained until 1925. Her husband, Robert T. Herrick, remained in the family dwelling in Kansas City, Missouri, until some time in the summer of 1915, when he stored the furniture and went next door to live with his mother, with whom he remained until September, 1916, when he definitely removed to Independence, Kansas, where he subsequently died.

Viola D. Herrick having in 1925 returned to live in Missouri, action was in May of that year brought against her on both notes in the Circuit Court of Jackson County in that state. The cause having been there tried before a jury, verdict and judgment went for the defendant, but the circuit court granted a new trial. From that action an appeal was taken by Mrs. Herrick to the Supreme Court of Missouri, which on *September 3, 1931,* rendered its decision affirming the order granting the new trial and which, in effect, ordered a new trial. Application for a rehearing having been made to the Supreme Court within the time allowed by its rules therefor, the same was by it denied on *November 20, 1931.* On December 4, 1931, on what was known as a "peremptory" call of the calendar of the circuit court, noticed according to routine in the Kansas City legal publication, but, so far as appears, without actual appearance at the hearing on behalf of either party, or other notice to either party, an order was made purporting to dismiss the case for want of prosecution. The Supreme Court mandate, corresponding to our *remittitur,* had not in fact yet issued and did not issue until December 14, 1931, and was not filed with the circuit court until December 15, 1931. Mrs. Herrick having moved to California in the fall of 1935, died a resident thereof on December 30, 1936, and the appellant San Diego Trust & Savings Bank was appointed administrator with the will

annexed of her estate. On July 26, 1937, the respondent C. S. Casner, on discovering the fact that an order had been made dismissing her action, filed in the circuit court at Kansas City, Missouri, her *ex parte* motion to set aside the dismissal of her action in that court, and to reinstate the case on its docket, on the ground that the dismissal was made without actual notice to her and was without jurisdiction since, as she claimed, the cause was at the time still pending in the Supreme Court; and on July 29, 1937, the circuit court made an order purporting to set aside the dismissal and to reinstate the case. On July 12, 1937, the respondent presented in California to the appellant administrator with the will annexed her claim against Mrs. Herrick's estate upon the notes, and, the claim having been rejected, the present action was filed on December 2, 1937.

The complaint alleges the execution and, except for the credits referred to, the nonpayment of the notes, and pleads certain provisions of the Missouri statutes. These are sections 860, 861 and 871 of chapter 5, article IX of the 1929 statutes of that state, all of which are but reenactments of earlier statutes, as follows:

"Sec. 860. Civil actions, other than for the recovery of real property can only be commenced within the periods prescribed in the following section, after the causes of action shall have accrued. . . .

"Sec. 861. What actions shall be commenced within ten years: First, an action upon any writing, sealed or unsealed, for the payment of money or property. . . .

"Sec. 871. If, at any time, when a cause of action herein specified accrues against any person who is a resident of this state, and he is absent therefrom, such action may be commenced within the times herein respectively limited after the return of such person into the state.

"And if after such cause of action shall have accrued such person depart from and reside out of this state, the time of his absence shall not be deemed or taken as any part of the time limited for the commencement of such action."

The complaint sets out the situation as above stated with respect to the whereabouts of Robert T. Herrick and Viola D. Herrick at the various times mentioned, pleads the commencement of the suit in Missouri on May 1, 1925, and personal service of process therein on Viola D. Herrick in her lifetime

in Missouri, and the death of her husband prior to the institution of the action, pleads that the action remains pending and undisposed of, sets out the presentation of the claim against Viola D. Herrick's estate in California and its rejection, and asks judgment for the amounts of the notes with interest accrued and unpaid. The effect of the answer is to deny the execution by Mrs. Herrick of the notes, as well as their nonpayment, to admit the existence of the Missouri statutes pleaded, to allege a change of Viola D. Herrick's residence as of December, 1913, from Missouri to Kansas, and her continued residence in the latter state until March, 1925, when it is admitted that she again took up her residence in Missouri, and to admit that she moved to California in September, 1935. The commencement of the Missouri action on May 1, 1925, is admitted, as well as the personal service there of process upon Mrs. Herrick and her appearance therein, but it is claimed that this action was disposed of by dismissal on December 4, 1931. The Missouri statutes referred to are set up as a bar to the present action, as are also sections 337, 361 and 580a, Code of Civil Procedure, of the State of California.

■ The appellant first claims that the endorsement by the Irrigation Loan & Trust Company of the $6,000 note was ineffectual to pass any title to the same to the respondent Mrs. Casner. The argument is that, though named as payee in the note, the Irrigation Loan & Trust Company never in fact owned the note or had any proprietary right in it and never received any delivery of it except merely its momentary possession to enable the endorsement to be made, and, therefore, never bore any such relation to the paper as to authorize that corporation to endorse it, and accordingly that such endorsement was unauthorized and a mere nullity. In support of this contention the appellant cites *Chitwood* v. *Hatfield et al.*, 136 Mo. App. 688 [118 S. W. 1192]. The facts in that case are stated in the opinion. The plaintiff having sued Hatfield, the maker, and various of the sureties on the note, was given judgment against Hatfield, but was refused any judgment against the sureties. The action of the trial court was affirmed on appeal. The appellate court there noted that the maker, Hatfield, had received from the plaintiff Chitwood, money represented by the note before obtaining Cunningham's (the payee's) endorsement on the paper;

that the sureties had undertaken to contract with Cunningham, not with the plaintiff; that Cunningham had neither received any delivery of the note to himself as owner nor accepted any such delivery, and, therefore, that he had no rights to pass to anyone by his endorsement; that there was a complete absence of contractual relations between the sureties and the plaintiff and that the plaintiff therefore had no cause of action against them.

The appellant claims that this case is directly in point in that the principal obligor on the present $6,000 note is Mr. Herrick, to whom alone the respondent advanced the money, and that Mrs. Herrick received none of respondent's money, and never was in fact any more than a surety on the note. As bearing on the situation so far as Mrs. Herrick was concerned, the appellant also calls attention to the Texas case of *Rabb* v. *Seidel* (Texas Commission of Civil Appeals, sec. B, April 25, 1923), 250 S. W. 420, 423 [reversing (Texas Civil Appeals) 218 S. W. 607], wherein it is stated that:

"Whether or not an accommodation note never accepted by the payee is binding on the accommodation surety when disposed of by another of the makers . . . without the knowledge or consent of the accommodation surety is a question on which the Courts of Civil Appeals in Texas are not in harmony, and on which the holdings of the courts of last resort in other states are in conflict."

Cases are then cited both from the Texas courts of civil appeals and from the courts of other states, from which it appears that the question has been variously decided. There cannot, of course, be any claim in the case at bar that the respondent became the holder of the note without notice that the Irrigation Loan & Trust Company had refused the loan, for Mr. Casner was at all times aware of the circumstances, and, as he was the respondent's agent in the matter, his knowledge on the subject is imputed by law to her.

Respondent, however, calls attention, as upholding endorsements in circumstances similar to those involved in the case at bar, to the case of *Webb* v. *Rolla Produce Co.* (St. Louis Court of Appeals, 1921), 234 S. W. 1068, in which, however, *Chitwood* v. *Hatfield, supra,* is distinguished as not in point for the reason that in the Hatfield case the defendants were mere sureties on the note and received no benefit therefrom. And also calls our attention to *Broyles* v. *Morris* (St. Louis

Court of Appeals, 1922), 245 S. W. 341. Undoubtedly this latter case does militate against the applicability of *Chitwood* v. *Hatfield, supra,* to the case at bar, for it is there held (quoting from the syllabus) that:

"Where defendants signed a note for another, but the consideration was advanced by W. before maturity after the note was signed over to him by payee, the delivery to payee gave effect to the note, and in W's action for collection defendants could not claim . . . that there was no delivery on the ground that no consideration passed between them and payee, since they were not thereby deprived of any defense which they might have had against payee had he retained the note."

In the body of the opinion, *Chitwood* v. *Hatfield, supra,* is distinguished on the ground that there the original payee, Cunningham, did not endorse the note until after it had been negotiated to the plaintiff and one of the signers of the note was procured after the original payee had refused to accept it, so that there became applicable the rule laid down by Missouri statute that "when an incomplete instrument has not been delivered, it will not, when completed and negotiated without authority, be binding in the hands of any holder or against any person whose signature was placed thereon before delivery". Assuming, however, for the sake of argument, that the Texas case of *Rabb* v. *Seidel, supra,* is sound law, and that, in view of the decision in *Chitwood* v. *Hatfield, supra,* it must, despite anything to the contrary said in *Broyles* v. *Morris, supra,* be treated also as expressing the law of Missouri, it is still true that its applicability in the case at bar is dependent on the question whether Mrs. Herrick was a mere surety on the $6,000 note which she signed with her husband or had all the responsibilities of one primarily liable on the paper. The respondent urges that the detriment to her, that is the respondent, from advancing money to Mrs. Herrick, was sufficient consideration for Mrs. Herrick's signing the note, citing *Crocker National Bank of San Francisco* v. *Say,* 209 Cal. 436, 440 [288 Pac. 69]. The point made by the appellant, in respect to Mrs. Herrick, is not that the circumstance, which respondent's brief concedes, that she received none of respondent's money herself, would alone exonerate her from liability as a surety, but that what exonerates her is that she did not receive the consideration purporting to be evidenced by the note which she signed, that is,

consideration from the Irrigation Loan & Trust Company, and that she cannot be found to have agreed to delivery of the note for a consideration moving to her husband or anyone else from some other party than the Irrigation Loan & Trust Company. It may be conceded that such a defense would not be available to Mr. Herrick, who actually participated in the arrangement whereby respondent, rather than the Irrigation Loan & Trust Company, advanced the money represented by the note, but the question is not whether it would have been available to him, but whether or not it was available to her, and, therefore, is or is it not available to appellant as her executor. Respondent calls attention to section 2688 of the Revised Statutes of Missouri of 1929 (formerly section 846 of the Revised Statutes of 1919) reading as follows:

"Liability of Maker: The maker of a negotiable instrument, by making it, engages that he will pay it according to its terms, and admits the existence of the payee, and his capacity to endorse."

We are not convinced that Mrs. Herrick ought to be regarded as an accommodation maker or as a surety. The circumstance that she signed a deed of trust to property standing in her name, upon which improvements were to be made, as security for the note is, in itself, evidence against her being such. Appellant's counsel have cited various authorities to the effect that the test is simply whether or not she received anything from the transaction for her own personal use and benefit. Here no improvements from the proceeds of the note were erected on her property which was made security for its payment. Neither did she directly receive any part of the cash proceeds of the loan. The testimony is that the proceeds were used to finance her husband's building operations elsewhere. From the evidence it appears that what he was doing was erecting buildings on certain properties presumably for sale, and as a member of a company or partnership. During the time in question, Mr. Herrick built several houses, one of which Mr. and Mrs. Herrick occupied, and another was occupied by Mr. Herrick's mother. The title to this last-mentioned house stood in the name of Viola D. Herrick and she conveyed this property after the death of her husband. Mr. Herrick also carried certain life insurance which Mrs. Herrick received upon his death. There is no testimony that Mrs. Herrick did not receive the benefit

of the $6,000 or that the manner in which the money was paid out was entirely with her approval and consent. The Herricks had also borrowed money from the Irrigation Loan & Trust Company on other occasions for these building operations.

Examination of the $6,000 note discloses that Mrs. Herrick signed the note as a maker, and there is no testimony that she signed it as a surety or accommodation maker, or that respondent dealt with her or accepted her on any other basis than is disclosed by the note. The burden would be on anyone claiming that Mrs. Herrick signed the note other than as a maker to establish such fact by a preponderance of the evidence.

In *Stephenson* v. *Joplin State Bank,* 160 Mo. App. 47 [141 S. W. 691], it was held that the fact that the payee of the note knew that two of the others who signed as principals were, as between themselves, sureties for the third signer, would not make them sureties as to the payee, where it appeared from the note that they signed as makers. (See, also, *First Nat. Bank & Trust Co.* v. *Limpp,* 221 Mo. App. 951 [288 S. W. 957].) We are of the opinion that the doctrine applied in *Chitwood* v. *Hatfield, supra,* cannot be applied to the instant case. The distinction is sufficiently pointed out in *Broyles* v. *Morris, supra,* and *Webb* v. *Rolla Produce Co., supra.* We therefore concur in the finding of the trial court that the defense claimed by appellant that Mrs. Herrick was not a party to the contract was not a valid one.

The appellant advances various contentions in support of its claim that, as to each of the respective notes sued upon, the respondent's cause of action is barred under the statute of limitations applicable. Mrs. Herrick only resided in California a little over a year prior to her death so that, by virtue of the provisions of section 351, Code of Civil Procedure, the four-year limit after the accrual of the cause of action, within which this action might have been filed had she been here, is inapplicable. (*Dougall* v. *Schulenberg,* 101 Cal. 154 [35 Pac. 635]; *McKee* v. *Dodd,* 152 Cal. 637 [93 Pac. 854, 125 Am. St. Rep. 82, 14 L. R. A. (N. S.) 780]; *Chappell* v. *Thompson,* 21 Cal. App. 136 [131 Pac. 82].)

The only other provision of the California statute that requires notice in the instant case is section 361, Code of Civil Procedure, to the effect that:

"When a cause of action has arisen in another state, or in a foreign country, and by the laws thereof an action thereon cannot there be maintained against a person by reason of the lapse of time, an action thereon shall not be maintained against him in this state, except in favor of one who has been a citizen of this state, and who has held the cause of action from the time it accrued."

There appears to be no real dispute that the question whether or not the present action could have been properly maintained here, was dependent, as to each of the respective notes, on the question whether a cause of action thereon could have been maintained in Missouri. It is undisputed that the Missouri statutes involved are those hereinbefore set out.

The $6,000 note matured on April 18, 1914, and unless the Missouri statute was in some manner tolled, the right to commence an action on it would, therefore, have become barred if such action were not commenced by April 18, 1924, whereas, as already noticed, respondent's action there was not in fact commenced until May, 1925.

There is no dispute that, under the law of Missouri, a payment on a promissory note has the effect of tolling the statute, so as to require the lapse thereafter of the whole ten years from the date of such payment before an action on the note is barred, nor that the payment by one of two joint makers of a note is effectual to toll the statute as to the time for beginning an action as against both makers. (*Vernon County* v. *Stewart*, 64 Mo. 408 [27 Am. Rep. 250] ; *Clinton County* v. *Smith*, 238 Mo. 118 [141 S. W. 1091, 37 L. R. A. (N. S.) 272] ; *Harris* v. *Stewart*, 197 Mo. 489 [196 S. W. 1033, 1034] ; *Fowler* v. *Sone*, (Mo. App.) 226 S. W. 995, 996.) As has been seen, the last payment on this note by Mr. Herrick is one of $75 on March 25, 1917. The time for filing an action in Missouri on the note was automatically extended to March 25, 1927, which would mean that respondent's Missouri action upon it was brought in proper time. It follows that as to the $6,000 note, the action in the Missouri court must be held to have been brought in time. What we have just said affects, of course, the $6,000 note only. On the $5,000 note no payments were ever made otherwise than such, if any, as may have been implied by the law from the realization of

$1,000 from the the sale of the land by which it was in some degree secured.

The next question, then, is whether or not there is any basis for the appellant's claim that the Missouri ten-year statute of limitations barred the respondent's right to sue on the $5,000 note before she actually brought her Missouri action thereon in 1925. The $5,000 note would not in the ordinary course of events have matured until April 3, 1916, which would mean that action on it in Missouri would not, unless its maturity were accelerated, have become barred as to it until April 3, 1926. It follows that the Missouri action, so far as this note was concerned, having been commenced in May, 1925, was begun in time unless the maturity of the note was accelerated by reason of the action taken in foreclosing the deed of trust made to secure it. The note itself contains no acceleration clause. However, the deed of trust made to secure it and the interest notes which accompanied it contains the language:

"But if default be made in the payment of said notes, any part thereof, or any of the interest thereon when due, or in the faithful performance of any or either of said agreements as aforesaid, then the whole of said note shall become due, and be paid as hereinafter provided."

It is also provided that any statement or recital in the trustee's deed in the event of foreclosure shall be *prima facie* evidence of the truth of that which is recited. The trustee's deed recites the default in payment of interest on the indebtedness and "that said indebtedness is due and unpaid". The appellant claims that these circumstances evidence an acceleration in the maturity of the $5,000 note so that the whole matured in 1914 and became barred at the corresponding date in 1924, that is before the respondent's Missouri action was commenced. It was unquestionably held in *Noell* v. *Gaines*, 68 Mo. 649 (1878), in a case where two notes, neither of which contained an acceleration clause, and which by their terms fell due at different times, were secured by a deed of trust which did contain such a clause, that an election by the payee on default in interest to proceed with foreclosure of the deed of trust, had the effect of so accelerating the maturity of both notes, as to require notice of dishonor to be immediately given to an endorser as a prerequisite to holding him. This was a decision by the Supreme Court of Missouri *in banc* and it is

appellant's contention that it is not only in accord with the weight of authority elsewhere, but also that it has never been effectually overruled in Missouri. A contrary view was reached in *Owings* v. *MacKenzie,* 133 Mo. 323 [33 S. W. 802] (1896), wherein it was held that a promissory note is not affected as to the date of its maturity by the provisions of a deed of trust securing it declaring that it shall become due on default of payment of another note, except for purposes of enforcing the deed of trust and realizing on the security; that being a separate instrument, enforceable independently of the deed of trust and governed by the law merchant, the holder has the right to treat it in accordance with its own terms. This case was followed by *Board of Trustees of Westminster College* v. *Piersol,* 161 Mo. 270 [61 S. W. 811] (1901), following *Owings* v. *MacKenzie, supra,* and to the same effect. *Owings* v. *MacKenzie, supra,* had meanwhile been followed by the St. Louis court of appeals in *Lawson* v. *Cundiff & Spencer,* 81 Mo. App. 169, 177 (1899), and its doctrine is referred to by that court in *Curry* v. *La Fon,* 155 Mo. App. 678 [135 S. W. 511] (1911), and in *Brinsmade* v. *Johnson,* 192 Mo. App. 684 [179 S. W. 967] (1915), as having overruled what had earlier been decided on the subject. (See, also, Springfield Court of Appeals in *Frye* v. *Shepherd,* 173 Mo. App. 200 [158 S. 'W. 717, 720] (1913); *City Nat. Bank* v. *Goodloe-McClelland Com. Co.,* 93 Mo. App. 123, 136 (1902); *Beavers* v. *Farmers' & Traders' Bank,* 177 Mo. App. 100 [163 S. W. 529, 530] (1914).) There are two cases in which the Supreme Court of Missouri *in banc* has referred to *Owings v. MacKenzie, supra,* as stating the correct rule. (*Rumsey* v. *Peoples Ry. Co.,* 154 Mo. 215, 246 [55 S. W. 615, 624], and *State* v. *Ellison,* 266 Mo. 580 [182 S. W. 740, 743].) (See, also, *Graves* v. *Davidson,* 334 Mo. 882 [68 S. W. (2d) 711].)

It follows, in our opinion, that the cause of action upon the $5,000 note here involved did not accrue in 1914 by reason of the foreclosure, prior to its due date, of the trust deed whereby the notes were secured, but that the obligation so secured then matured only for the purpose of permitting a resort to the security but not otherwise. Even if the due date of the $5,000 note was accelerated as claimed by appellant, still it is of no value to the appellant for the reason that if the court has properly found that Mrs. Herrick was a resident of the State of Missouri in 1914, the statute of limitations

was tolled during her absence from the state. (Sec. 871, chap. 5, art. IX, 1929 Statutes of Missouri.)

█ Appellant next claims that because Mrs. Herrick left Missouri in December, 1913, and remained in Kansas until 1925, that the statute of limitations ran upon the notes involved in the suit, and that they were, therefore, barred by the statute of limitations. Respondent claims that Mrs. Herrick was a legal resident of the State of Missouri until 1916, when her husband left Missouri and moved to the State of Kansas. Appellant bases its theory on the proposition that Mr. Herrick's conduct was such as to give Mrs. Herrick a right to establish a domicile separate from that of her husband. Respondent claims that the evidence is not sufficient for that purpose nor does the law justify this conclusion. It is normally true that the residence of the husband is, in law, deemed to be that of the wife, and that is as true in Missouri as it is anywhere else. (*McPherson's Administrator* v. *McPherson*, 70 Mo. App. 330, 336; *Comerford* v. *Coulter*, 82 Mo. App. 362; *State* v. *Wurdeman*, 129 Mo. App. 263 [108 S. W. 144]; *Wyrick* v. *Wyrick*, 162 Mo. App. 723 [145 S. W. 144]; *Ware* v. *Flory*, 199 Mo. App. 60 [201 S. W. 593]; *State* v. *Davis*, 199 Mo. App. 439 [203 S. W. 654, 656].)

The evidence discloses that the home in Missouri was maintained by Mrs. Herrick's husband for some time after she had gone to Topeka, and even after it was given up. Mr. Herrick remained in Kansas City until late in 1916. The evidence tends to indicate that Mrs. Herrick's absence in Topeka was, largely at least, due to the financial misfortune of the family, although it may to some extent have been induced by his drinking. This did not prove, however, that she did not entertain the expectation of returning if conditions were better. At no time did she commence any legal proceedings against her husband. True, later, and possibly not until after his death, she registered as a voter in Kansas. But assuming that she then intended to make that her home, the question remains whether that intention can be properly found to date back to the time when her husband still remained in Missouri. We cannot say that we are convinced that it did. The testimony of Mrs. Brewer, a daughter of Mrs. Herrick, indicates that the relation between her father and mother remained friendly even after their separation. Taking this testimony in conjunction with the testimony that Mr. Herrick main-

tained a family home in Missouri until 1915, when he placed the furniture in storage and moved into the home occupied by his mother, we are convinced that the trial court was justified in finding that the separation of Mr. and Mrs. Herrick was only the result of financial stress; that the parties were friendly and that they hoped that the financial circumstances would change and they would be reunited at their old home; that the proof on the whole was insufficient to show that when Mrs. Herrick came to Topeka in 1913 she intended definitely to abandon her Kansas City residence, or that she had formed any such intention as early as 1914 when the appellant claims that respondent's cause of action on the $5,000 note accrued. (*Comerford* v. *Coulter, supra; McPherson's Administrator* v. *McPherson, supra; Ware* v. *Flory, supra; State* v. *Davis, supra.*)

It is claimed, on the part of appellant, that the Missouri action was dismissed on December 4, 1931, and that since it is too late to bring any new action on the respondent's demand in Missouri, her cause of action by virtue of section 361 of the California Code of Civil Procedure was barred in this state before she presented her claim against the decedent's estate here and before she brought the present action here. What was done in the Misouri courts has already been recited. What has now to be considered is its legal effect. The appellant's claim is that, the Missouri action having once been dismissed, it was not competent to set the dismissal aside as purported to have been done but that it was effectual to dispose of the action here. Respondent, on the other hand, claims that the dismissal in Missouri was at all times absolutely void and might therefore be expunged at any time from the court's record there. Manifestly, the action of the circuit court in undertaking to dismiss respondent's case was either regular and valid or irregular and voidable, or wholly without jurisdiction and void.

It seems to be well settled in Missouri that a judgment regularly given in due course may not be disturbed by the court that rendered it after the term at which it was rendered. (*State* v. *Hartmann,* 330 Mo. 386 [51 S. W. (2d) 22, 24, 25].) With respect to irregular judgments it is in section 1101 of the Revised Statutes of Missouri of 1929 provided that:

"Judgment in any court of record shall not be set aside for irregularity, on motion, unless such motion be made within

three years after the term at which such judgment was rendered.''

If it be true, as respondent claims, that the action of the Circuit Court of Jackson County, Missouri, in undertaking to dismiss her action for want of prosecution was wholly without jurisdiction and void, then it will probably not be questioned that it was competent for that court at any time and with or without notice to vacate and set it aside.

As bearing on the question whether the Circuit Court of Jackson County was or was not wholly without jurisdiction of the case at the time it undertook to dismiss it, counsel for the respective parties have called attention to a considerable number of Missouri decisions. It appears that there is not in Missouri any statutory requirement that the Supreme Court of that state entertain a motion for rehearing after one of its decisions (*Ex parte Craig,* 130 Mo. 590, 594 [32 S. W. 1121] [1895]), but it is provided for only by court rule. The general rule as to the effect of the mandate is that in order to reinvest the lower court with jurisdiction after the rendition of judgment on appeal there should be a mandate or other order of remand issued by the appellate court. However, it has been held in some cases, that, when the lower court ascertains the judgment above and proceeds thereunder, its proceedings are not vitiated by the absence of a formal mandate, and that the voluntary appearance of the parties and their participation in subsequent proceedings in the lower court without objection constitute a waiver of a formal remanding order. A mandate is not always necessary to authorize an issuance of execution on a simple affirmance. (4 Cor. Jur., pp. 1208, 1209, par. 3256; 5 Cor. Jur. Secundum, pp. 1487, 1488, par. 1959; 3 Am. Jur., p. 727.)

Appellant, however, cites *Meyer* v. *Campbell, McNiff & Barnes,* 12 Mo. 603 (1849); *Van Hafften* v. *Clayton,* (Mo. App.) [259 S. W. 530] (1924); *Newberry* v. *City of St. Louis,* (Mo. App.) 109 S. W. (2d) 876, at 881.

In *Pickel* v. *Pickel,* 251 Mo. 197 [158 S. W. 8] (1913), the court said:

"The case was not simply affirmed by this court but was reversed in part, consequently certain decisions dealing with simple affirmances may be ignored. Further, those cases in which the filing of the mandate in the trial court was waived are not in point. By the statute (Section 2089, R. S. 1909)

it is made the duty of the clerk of this court to transmit, within 30 days, a copy of its opinion to the court from which the appeal was taken, and it has always been the practice to transmit therewith a copy of the judgment of this court which it is then the duty of the clerk of the trial court (Section 2152, R. S. 1909) to enter in the judgment docket.

"The opinion and judgment constitute the mandate of this court which 'is the official mode of communicating the judgment of the appellate court to the lower court'. (13 Ency. of Pl. & Pr., p. 837.) The great weight of authority is that no proceeding can be had, in the absence of waiver, controlling statute or exceptional circumstances until the mandate has been filed. (Id.) Whatever may be said as to the possible effect of defendants' filing the bond after the opinion was filed in this court and before the mandate was filed in the trial court, there is ample authority for the conclusion that he was not *required* to act affirmatively, in the circumstances of this case, until the mandate reached the court below. (*Horton* v. *State*, 63 Neb. 34 [88 N. W. 146] ; *Marzen* v. *People*, 190 Ill. 81, loc. cit. 86 [60 N. E. 102] ; *Barnwell* v. *Marion*, 56 S. C. 54 [33 S. E. 719] ; *Trowbridge* v. *Sickler*, 48 Wis. 424 [4 N. W. 563] ; *Messenger* v. *Marsh*, 6 Iowa, 491.)

"Parties are not advised in advance of the day on which this court intends to decide a particular case, and no formal method of notification to them is prescribed. The notice of the result is given to the trial court itself by the mandate, and until that mandate is filed, in a case like this, the trial court is not and cannot be required to proceed, and, as the cases cited hold, time granted by the judgment affected by the appeal cannot well be said to begin to run until the party against whom it runs is vested, or revested, with the *right* to act in the premises. Certainly the weight of authority and, we think, the reason of the thing, supports the conclusion that the stay of proceedings did not terminate until the mandate was filed."

In *Argeropoulos* v. *Kansas City Rys. Co.*, 201 Mo. App. 287 [212 S. W. 369] (1919), it is said in the third syllabus that:

"The handing down of an opinion *reversing* a judgment does not affect the judgment of the lower court until there is a judgment of the appellate court and the filing of a mandate based thereon . . . " (Italics ours.)

The Missouri cases referred to exhibit a wide variety of situations pertinent in a general way to the inquiry as to the stage at which decisions of various courts of appellate and *nisi prius* jurisdiction become, in that state, conclusive upon the tribunals rendering them or upon subordinate courts. None of them appear to settle in terms the Missouri law upon the precise point we are called upon to decide here. Undoubtedly a distinction is often drawn between the reversal of a decision of a lower court and its affirmation, with respect to the effect of the action taken on the power of that court to proceed further with the case. In the light of the case of *Argeropoulos* v. *Kansas City Rys. Co., supra,* it appears to be the law of Missouri that a trial court may not in Missouri disregard its original judgment where such judgment has been reversed and act upon the basis of such reversal until a mandate pursuant to the reversal has been filed with it.

It is urged that the situation is otherwise in the case of an affirmation. Some color is given to that view by the cases cited by appellant. In the instant case, however, it was not a judgment that was affirmed, but an order granting a new trial. The affirmation of a judgment would call for no further action by a trial court going to the merits of the case. Contrariwise, the affirmation of an order granting a new trial would. Therein the two situations are in considerable degree different. Counsel have found it impossible to produce any Missouri case directly determinative of the precise question, in the sense of involving facts precisely presenting it. However, the rule cited in *State* v. *Ragland,* 339 Mo. 452 [97 S. W. (2d) 113, 115], it seems to us, would apply to the facts in this case. The court there said:

"No proceeding can be had in the lower court until the mandate has been filed in such court, or at least issued (13 Ency. Pl. & Pr., pp. 837, 840). Mandate denotes the judgment, as shown above, or the judgment and order, issued by an appellate court upon the decision of an appeal or writ of error. Under the statute (Mo. St. Ann., sec. 1069, p. 1369) and under the practice of this court, a certified copy of the opinion accompanies the mandate. In certain instances—for example when the judgment is reversed and the cause remanded with directions *to* proceed as directed in the opinion (*Pickel* v. *Pickel,* 251 Mo. 197, 208 [158 S. W. 8] ; *Keaton* v. *Jorndt,* 259 Mo. 179, 190 [168 S. W. 734] ), and in other con-

ceivable situation where the opinion might properly be considered—the opinion by such reference made to it becomes *pro tanto* incorporated with the judgment or mandate, which then constitutes a limited 'power of attorney' to the Court below.''

The court then continues further to say that the situation is different with a simple reversal. It goes without saying, although the court does not discuss the matter, that the situation is also different when the higher court's judgment is one of affirmation of a judgment rendered below. On the other hand, when there is an affirmation of an order granting a new trial, it would not be far wrong to describe the mandate as a ''limited power of attorney to the lower court'' since the only manner in which that court may obey it, assuming that the parties seeking to pursue the litigation act with proper dispatch, is to proceed with the new trial.

We are therefore convinced that it is the Missouri law that when an order granting a new trial has been the subject of an appeal, the trial court is without any power to dispose of the case until the mandate is received or has at least been issued out of the higher court. Jurisdiction is, despite an appeal, in many circumstances retained during its pendency by a trial court to deal with collateral matters, but a dismissal of the whole case cannot be said to be a mere collateral matter, since its effect would be to wholly nullify the very order which was the subject of the appeal. In view, then, of the authorities cited we think it must now be considered and held that the dismissal of the Missouri action was beyond the power of the circuit court and void at the time that it was ordered, and, therefore that that court had power at any time to set it aside with or without notice.

The order setting aside the order dismissing the action was predicated on the ground set forth in the application that the previous order was void for the reason that *''said Circuit Court had no jurisdiction or authority to call said case or to dismiss same at the time it did''.* We need cite no authority as to the right of a court to set aside its order or judgment when it is void and is a mere nullity. Such an order has been characterized as a dead limb on the judicial tree, incapable of bearing fruit, which may be chopped off at any time. (*National Union Fire Ins. Co.* v. *Vermillion,* (Mo. App.) 19 S. W.

(2d) 776, 783; 34 Cor. Jur., p. 509; Freeman on Judgments, 5th ed., p. 643.)

What we have said in reference to the $5,000 note applies with equal force to the several interest notes accompanying said $5,000 note. We are therefore of the opinion that the action having been brought on all of the notes within the time permitted by the statute of limitations, the action was pending and being maintained in Missouri until it was in some manner legally disposed of. The dismissal of the trial court in Missouri on December 4, 1931, being absolutely void, had no effect upon the pendency of the action. ▮ The action was pending and being maintained in Missouri at the time the present action was filed in California and therefore comes within the provisions of section 361, Code of Civil Procedure, of the State of California.

From the facts found and the authorities cited, it follows that the judgment of the superior court should be and is affirmed.

Barnard, P. J., and Marks, J., concurred.