# ELLA M. PICKEL, Appellant, v. WILLIAM PICKEL and FREDERICK J. PICKEL.

### Division Two, June 17, 1913.

1. **DECREE: Appeal: Time for Filing Bond: Extended by Super-sedeas.** Where an appeal was taken from a judgment reading that defendant "may," within ten days, "execute and deliver to plaintiff his bond," etc., or, failing that, suffer designated consequences, the time for filing the bond was extended by *supersedeas.*

2. **APPEAL: Supersedeas: Terminates When Mandate is Filed in Trial Court.** Stay of proceedings by *supersedeas* during appeal does not terminate until the Supreme Court's mandate is filed in the trial court.

3. ————: **Dismissed: Misconstruction of Decree Appealed From.** Where plaintiff took proper preliminary steps to appeal and then withdrew or dismissed them, misconstruing the effect of the decree from which she appealed, the Supreme Court will not adopt her misconstruction in order to prevent her from losing the benefit of the appeal she dismissed.

4. ————: **From Order Approving Bond Filed in Accordance With a Decree: Questions for Review.** Plaintiff appeals from an order of the circuit court approving defendant's bond given in accordance with the court's decree, and contends that the effect of the bond is to exempt other property of defendant from plaintiff's claims. Plaintiff perfected no appeal from the decree itself. *Held,* that the contention is not to be considered. What the decree was and is and not what it ought to have been is now the question.

5. ————: ————: **Evidence: No Offer in Trial Court.** Where no evidence was offered upon a point in the trial court, there is no record basis for an assignment of error before the Supreme Court based on the exclusion of such evidence.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel D. Fisher,* Judge.

AFFIRMED.

*Randolph Laughlin* for appellant.

(1) The decree of July 24, 1911, was self-executing. A self-executing decree is not superseded by an

appeal bond. Mann v. Doerr, 222 Mo. 18; Commission Co. v. Spencer, 236 Mo. 628; Jayne v. Drorbaugh, 63 Iowa, 715; Allen v. Church, 101 Iowa, 123; Elliott's App. Proc., secs. 392, 393; Finkelnburg's Mo. App. Pr., 76-77; State ex rel. v. Dillon, 96 Mo. 61. Especially is this true where the self-executing portion of the decree is merely a matter of grace or favor extended for a limited length of time. In such a case, the time expires, and the privilege with it, notwithstanding the appeal. Ferry v. Bank, 9 Abb. Pr. 103. It results that the affirmance of the decree by this court (Pickel v. Pickel, 243 Mo. 641) affirmed it as it then was (and, the privilege having expired, it affirmed the expiration of that privilege), and left the parties in the same position they would have occupied had there been no appeal at all. Respondents have not been able to meet, and have not met directly, any one of these four several contentions. But they have sought to escape them indirectly, by advancing other propositions inconsistent with the conclusion reached. (2) Payment or performance of an obligation imposed by judgment or decree is not an acceptance of benefit thereunder, but on the contrary is regarded as an act done by compulsion, and it will neither work an estoppel nor prevent or embarrass an appeal. Lumaghi v. Abt, 126 Mo. App. 228; Cassell v. Fagin, 11 Mo. 207; Dakota County v. Glidden, 113 U. S. 222.

*Barclay, Fauntleroy, Cullen & Orthwein* for respondents.

(1) In the original case the defendants gave bond, and this stayed all proceedings and the defendant could not be required to give the $10,000 bond until the judgment was ripe for execution. State ex rel. v. Lewis, 76 Mo. 370. (2) A mandate is the official mode of communicating the judgment of the appellate court to the lower court, and no proceedings could

be had in the lower court until the mandate had been filed in such court. Lafferty v. Rutherford, 10 Ark. 453; People v. Wadloe, 166 Ill. 119; Piel v. Railroad, 12 S. W. 759. (3) One who has accepted satisfaction of a judgment or received the fruits of a judgment or decree cannot appeal therefrom. Wolfort v. Reilly, 133 Mo. 163; Rosenburger v. Jones, 48 Mo. App. 606; Robards v. Lamb, 76 Mo. 192; In re Sachleben, 106 Mo. App. 307; Waddingham v. Waddingham, 27 Mo. App. 596; Noah v. Insurance Co., 78 Mo. App. 370; King v. Campbell, 107 Mo. App. 496; Pockman v. Meatt, 49 Mo. 345; Evens v. Lubke, 15 Mo. App. 152. (4) Where the mandate fixes no specific time for compliance with the decision of the appellate court, the court below may fix the time. Ferriss v. Ferriss, 29 S. W. 976; Faircloth v. Isler, 76 N. C. 49; Bloor v. Smith, 96 N. W. (Wis.) 544. (5) On the remand of the cause the trial court may make any order or direction in its further progress that is not inconsistent with the decision of the appellate court, or that is necessary to carry such decision into effect. Patten v. Stitt, 34 N. Y. Sup. Ct. 346; Rogers v. Patterson, 4 Paige (N. Y.), 418; Bloor v. Smith, 96 N. W. (Wis.) 544. (6) The affirmance of the original judgment as modified by the Supreme Court was in effect a new judgment giving to Wm. Pickel the option to either file the bond within ten days therefrom or permit the property to be sold. Krause v. Steel Co., 91 Pac. 442.

BLAIR, C.—By its judgment of March 15, 1911, in a suit for maintenance, the circuit court of the city of St. Louis allowed plaintiff certain sums for attorney's fees and suit money and ordered her husband, defendant Frederick J. Pickel, to pay to her the sum of $100 on the first of each month thereafter for the support of herself and child. Thereupon plaintiff began a suit against her husband, Frederick J. Pickel, and his father, William Pickel, to set aside, on the

ground of fraud, the transfer of certain corporate stocks from the former to the latter. On the 24th day of July, 1911, in that case, the court entered its decree wherein it found, in substance, that certain sums aggregating about $1500 were due plaintiff from her husband under the decree of March 15, 1911, in the suit for maintenance; that payments of $100 each would thereafter fall due each month under that decree; that defendant Frederick J. Pickel was "insolvent except as to the property hereinafter mentioned and is execution proof and that plaintiff's indebtedness cannot be collected except out of the property of said Frederick J. Pickel which is involved in this suit; that the said property consists of certain shares of stock . . . ;" that these shares, specifying them, were worth "at least" $12,025; that the transfer of these stocks by Frederick J. Pickel to his father, William Pickel, was fraudulent and made and intended to defraud plaintiff and that as to plaintiff the transfer was "fraudulent and void." The decree proceeds:

"It is therefore ordered, adjudged and decreed by the court, that this cause be, and the same is hereby dismissed as to the defendant Pickel Marble & Granite Company;

"(5) That the defendant William Pickel may within ten days from the date hereof, pay to the plaintiff all moneys due to her under the aforesaid orders and judgments of the said courts, and unpaid, as heretofore found in paragraph 1 hereof, with interest on all from the date of maturity of each installment until paid, and also the costs hereof, and the attorney's fee herein allowed, and may, within said time, execute and deliver to the plaintiff his bond, in the full and just sum of ten thousand dollars, in due form, the form and security to be approved by the court, conditioned for the payment by him to the plaintiff of all moneys to become due to her hereafter under the said final decree of March 15, 1911, and under such modi-

fications thereof or orders supplemental thereto as may be made from time to time by the court having jurisdiction of the cause wherein the same is entered.

"(6) If the said William Pickel shall fail, within said time, to pay said amounts, and to execute said bond, then, in that case, it is ordered, adjudged and decreed by the court;

"(7) That the said transfers of said stock (described in paragraph 3 hereof), from Frederick J. Pickel to William Pickel, be, and the same are hereby vacated and set aside.

"(8) That said defendants William Pickel and Frederick J. Pickel are each and both of them enjoined and prohibited from transferring or assigning, and from attempting to transfer or assign and from delivering, hypothecating, mortgaging, pledging or encumbering said stock, or any portion thereof, or any certificate or certificates thereof, and from setting up any claim thereto, or to any part thereof of any kind or character against any execution which plaintiff may cause to be issued on said orders and judgments mentioned in paragraph one hereof, or either of them, and levied upon the same, or upon any part thereof; and they and each of them are further enjoined and restrained from obstructing or delaying, and from attempting to obstruct or to delay, by the filing of any notice, third-party claim, bond or other paper, or in any other manner or form whatsoever, any sale under any such execution which the plaintiff may cause to be levied on said stock, or on any part thereof.

"(9) That if the defendant William Pickel shall avail himself of the benefit of paragraph 5 of this decree, and shall well and truly pay the money and execute and deliver the bond, within the time therein limited, then and in that case, and so long as the said William Pickel shall continue to pay the money due to the plaintiff, as and when the same shall become due, to the full amount of said bond, the plaintiff is en-

joined and restrained from suing out any execution or executions to collect said money, or any part thereof. But if and when said William Pickel shall fail to pay any installment of money due plaintiff, as and when the same becomes due, this injunction created by this, the 9th paragraph of this decree, shall be and stand dissolved.

"(10) An attorney's fee of five hundred dollars is allowed plaintiff's attorney of record, for which let special execution issue against the shares of stock described in paragraph 3 hereof (or such portions thereof as plaintiff may elect to levy on) unless the defendant William Pickel shall pay said fee in accordance with the terms of paragraph 5 hereof. All other costs are ordered taxed against the defendants William Pickel and Frederick J. Pickel, for which let execution issue.

"(11) The court reserves jurisdiction of the parties and of the subject-matter of this controversy, and leave is given to all parties hereto to apply to the court, from time to time, for such further orders as may become necessary or proper to enable the plaintiff to collect the moneys found due and to become due to her by paragraph 1 hereof, including the right to move for a reference to take an accounting of the moneys due from William Pickel and the Pickel Marble & Granite Company, in the event it shall hereafter appear that such accounting is necessary to enable plaintiff to collect her claims."

On June 25, 1911, defendants filed in that case their motions for new trial. These were overruled on July 26, 1911, and on the same day each defendant filed his affidavit for appeal and on July 29, 1911, an appeal to this court was granted defendants. On July 26, 1911, plaintiff filed a motion to modify the decree, which motion was on July 29, 1911, overruled and the record then contains the following: "Affidavit of Ella M. Pickel (plaintiff) for an appeal to the Supreme

Court of Missouri from first decree, and for an appeal to the St. Louis Court of Appeals from injunction order made subsequent to final decree, filed and granted." On September 25, 1911, plaintiff filed with the circuit clerk in vacation her motion to dismiss her appeal and on the following day withdrew her application for an appeal to this court.

Defendants perfected their appeal from the decree, and on May 9, 1912, in this Division, an opinion was handed down reversing the judgment with directions as to the judgment to be entered by the trial court. Motions for rehearing and to modify the judgment were filed. On June 1, 1912, a modified opinion was filed in this court in the case whereby the judgment of the trial court was ordered affirmed except as to the allowance of $500 for attorney's fees in which particular it was ordered reversed. On June 8, 1912, the mandate of this court was received and filed by the clerk of the circuit court of the city of St. Louis.

On June 10, 1912, defendant William Pickel paid plaintiff all sums due her under the decree above set forth, in so far as it was affirmed by this court, and his attorney appeared before the circuit judge, in chambers, after the adjournment of court, and tendered, for approval and filing, his bond in the penal sum of $10,000, properly executed and conditional as prescribed by paragraph five of the decree. On objection by plaintiff's attorney that court was not in session the bond was lodged with the clerk and the matter went over until June 12, 1912, when it was again called up in open court. At this time plaintiff's counsel stated he did not object to the form of the bond or question the solvency of the surety. No question as to the genuineness of the signatures was then or is now made.

Written objections to the approval and filing of the bond were made on the grounds (1) that the ten days granted by the decree for filing the bond had ex-

pired and (2) that principle and surety were unsound of mind.

In connection with these objections counsel offered to prove that the property mentioned in the decree of June 24, 1911, was worth over $70,000, but the court refused the offer and on the same day, June 12, 1912, entered the following order:

"Ella M. Pickel v. William Pickel et al. No. 71509 A.

"Now, on this day comes the defendant, William Pickel, by attorney, and presents to the court the bond in the sum of ten thousand dollars, with Elizabeth B. Pickel as surety, which was lodged by him with the clerk of this court on the 10th day of June, 1912, and moves the court to approve the said bond and order the same filed, and the court having seen and examined the said bond doth order that the same be approved and filed herein, which is now accordingly done."

On June 14, 1912, plaintiff moved to vacate this order on the grounds that (1) the bond was filed out of time and (2) that William Pickel's failure to file the bond within ten days from the date of the decree misled plaintiff and cut off her right of appeal therefrom and (3) because the court erred in refusing to permit plaintiff to prove the value of the stocks involved. This motion the court overruled. Thereupon plaintiff moved the court to modify the decree itself by striking out of the ninth paragraph the words "to the full amount of said bond" on the grounds that the approval and filing of the bond, without the suggested modification, engrafted on the decree a false construction whereby (1) the liability of defendant Frederick J. Pickel would be and was limited to sums already paid and the amount of the bond: (2) the decree is caused to operate as an injunction against plaintiff without any pleading or evidence warranting such relief, and (3) upon the payment of allowances aggregating $10,000, the excess of the value of her husband's

property in William Pickel's hands is exempted. No evidence in support of this motion was tendered. The motion was overruled and plaintiff appealed.

It is asserted the trial court erred (1) in approving the bond and ordering it filed; (2) in excluding evidence of the legal incapacity of principal and surety on the bond; (3) in refusing proof that the stocks mentioned in the decree were worth in excess of $70,000; and (4) in overruling the motion to strike certain words from the decree.

1. In support of his contention that the bond was filed out of time counsel argues (1) that the appeal taken July 29, 1911, did not stay that part of the decree which granted William Pickel ten days in which to file bond and (2), if it did, nevertheless the bond was not approved and filed until more than ten days had expired after the opinion was filed in this court and there was therefore no compliance, in time, under the decree.

Effect of Supersedeas.

(a)  The decree of July 24, 1911, provided that the bond might be filed within ten days and also provided, alternatively, what should be the result of a failure to file the bond. Within the ten days allowed for filing the bond both plaintiff and the defendants appealed to this court. Defendants' appeal bond was approved and filed July 29, 1911, five days after the decree was entered. The statutory *supersedeas* (Sec. 2042, R. S. 1909) became immediately effective and further affirmative action under the decree was stayed.

The insistence that the time granted for filing the bond was a mere matter of grace is bottomed too much on the language of the decree and too little on its real meaning and effect. That language is permissive in form, it is true, but the effect of the decree was that William Pickel must pay the sums adjudged and give the bond prescribed or suffer designated consequences. The decree was, in fact, alternative and as fully conferred upon William Pickel the right to comply with

it by executing and filing the bond as it accorded plaintiff the right to execution in case he did not do so. Such was the construction put upon the decree by this court on the former appeal (Pickel v. Pickel, 243 Mo. l. c. 655) and with that construction we are satisfied. In such circumstances it cannot be said that the mere lapse of time during the life of the *supersedeas,* by virtue of which the trial court was precluded from acting at all affirmatively, operated to modify the decree to the extent of eliminating from it one entire and complete method it prescribed for its own satisfaction. To hold differently would be to say, in effect, that the trial court intended to offer the permission to file the bond as a mere inducement to defendants to abstain from appealing from the decree—a construction which we think ought not to be adopted unless the language used in the decree is clearly of such effect, nor, perhaps, unless that language makes it imperative. There is no such case here.

There is ample authority for the conclusion that the time was extended by the *supersedeas.* [Barnwell v. Marion, 56 S. C. 54; Fenton v. Bank, 27 Tex. Civ. App. 231; Woolfolk v. Bruns, 45 Minn. 96; Ruzicka v. Hotovy, 72 Neb. l. c. 594; Hohenadel v. Steele, 237 Ill. l. c. 235, 236.] The decision cited by appellant's counsel (Ferry v. Bank, 9 Abb. Pr. 100) is not in point. There, after vacating a receivership on defendant's motion, the trial court gave defendant twenty days in which to pay costs and answer, and, further, granted plaintiff twenty days in which to elect to discontinue, in which event defendant was by the order required to stipulate to answer within thirty days any new complaint plaintiff might file and also stipulate to refer to a designated person such new action for hearing and decision, otherwise judgment in the pending case to go against defendant as by default. Plaintiff appealed. It was held the appeal did not stay the running of the time granted plaintiff in which to

elect to discontinue because (1) under the New York statutes and practice appeals from interlocutory orders did not operate as a stay and (2) the time granted plaintiff to elect was clearly granted as a matter of grace and not of right. The opinion in that case is that of the trial judge. In neither particular mentioned is this case similar. The appeal was from a final decree and the time granted was granted by and as a part of the decree itself, and constituted a substantial and necessary part of one method by which the decree provided it might be satisfied.

(b) It is insisted, however, that though the appeal stayed the running of the time allowed, the bond was not actually approved and filed until June 12, 1912, eleven days after the filing of the opinion in the case in this court and, consequently, it must follow it was not filed in time.

This presents the question as to when the *supersedeas* ceased to operate as a stay. The mandate from this court was filed in the circuit court June 8, 1912, two days before the bond was lodged with the clerk and four days before it was approved in open court and filed.

Stay of Proceedings Ends on Filing of Mandate in Trial Court.

The case was not simply affirmed by this court but was reversed in part, consequently certain decisions dealing with simple affirmances may be ignored. Further, those cases in which the filing of the mandate in the trial court was waived are not in point. By the statute (Sec. 2089, R. S. 1909) it is made the duty of the clerk of this court to transmit, within thirty days, a copy of its opinion to the court from which the appeal was taken and it has always been the practice to transmit therewith a copy of the judgment of this court which it is then the duty of the clerk of the trial court (Sec. 2152, R. S. 1909) to enter in the judgment docket.

The opinion and judgment constitute the mandate of this court, which "is the official mode of communicating the judgment of the appellate court to the lower court." [13 Ency. of Pl. & Pr., p. 837.] The great weight of authority is that no proceeding can be had, in the absence of waiver, controlling statute or exceptional circumstances, until the mandate has been filed. [*Ibid.*] Whatever may be said as to the possible effect of defendants' filing. bond after the opinion was filed in this court and before the mandate was filed in the trial court, there is ample authority for the conclusion that he was not *required* to act affirmatively, in the circumstances of this case, until the mandate reached the court below. [Horton v. State ex rel., 63 Neb. 34; Marzen v. People, 190 Ill. 1. c. 86; Barnwell v. Marion, supra; Trowbridge v. Sickler, 48 Wis. 424; Messenger v. Marsh, 6 Ia. 491.]

Parties are not advised in advance of the day on which this court intends to decide a particular case and no formal method of notification to them is prescribed. The notice of the result is given to the trial court itself by the mandate and until that mandate is filed, in a case like this, the trial court is not and cannot be required to proceed and, as the cases cited hold, time granted by the judgment affected by the appeal cannot well be said to begin to run until the party against whom it runs is vested, or revested, with the *right* to act in the premises. Certainly the weight of authority and, we think, the reason of the thing, supports the conclusion that the stay of proceedings did not terminate until the mandate was filed. This view makes it unnecessary to consider the effect of the pendency of the motion for new trial, since the entire time from the entry of the decree until the filing of the bond, less the time the *supersedeas* was in force, was less than ten days.

(c) The argument that the effect of the conclusion that the appeal and *supersedeas* suspended the

running of the time for filing the bond
**Misconstruction** in question deprives plaintiff of her
**of Decree.** right of appeal from that part of the
decree which permitted the bond to be filed is not im-
pressive. Plaintiff did appeal, or, at least, take the
proper preliminary steps, and then withdrew or dis-
missed that appeal simply because she assumed the
construction of the decree which she now insists upon
to be the correct construction. The effect of the argu-
ment is, therefore, that because plaintiff misconstrued
the decree in the trial court and, relying on that mis-
construction, failed to perfect her appeal, this court
must now adopt her misconstruction of it to prevent
her losing the benefit of the appeal she dismissed.
This does not seem to follow.

(2) It is urged that the property of Frederick J.
Pickel in William Pickel's possession amounts to
$70,000 and that the effect of permitting
**Questions** William Pickel to file the $10,000 bond un-
**for Review.** der the decree is to exempt about $60,000
worth of it from plaintiff's claims. If the property in
question was of such great value it is singular that evi-
dence of the fact was not offered on the trial of the suit
to set aside its transfer. Regardless of that, however,
that question could have been appropriately discussed
on the former hearing had plaintiff perfected her ap-
peal.

What the decree was and is and not what it ought
to have been is the question now presented. The same
question presented here was the one the trial court
passed upon when it approved the bond and ordered
it filed and its refusal then to hear evidence of the
value of the property was fully justified. It was
wholly without relevance to the question as to what the
decree meant and whether the appeal stayed the run-
ning of the time granted. The compentency of such
evidence on the motion subsequently filed for a modifi-

cation of the decree it is unnecessary to consider, since no such evidence nor any other was offered on the hearing on that motion, and the order overruling it, in the absence of evidence, was right. It is not necessary to notice the affidavit as to the value of the property filed on July 26, 1911, by plaintiff's counsel, further than to say it was filed in support of a motion to modify the decree which motion was filed and overruled two days after the decree was entered and neither from that ruling nor the decree did plaintiff perfect an appeal.

3. No evidence of mental incapacity on the part of principal or surety on the bond was offered in the trial court and, consequently, there is no record

**Evidence.** basis for the assignment predicated on the exclusion of such evidence.

This concludes the review of the errors assigned. Some assumptions as to the effect of the filing of the bond under the decree it is unnecessary to either adopt or reject. The trial court retains continuing jurisdiction for the purpose of future orders whereby to do justice among the parties.

The judgment is affirmed. *Roy, C.,* concurs.

PER CURIAM.—The foregoing opinion of BLAIR, C., is adopted as the opinion of the court. All the judges concur.