Mary Rose STEGEMAN,
Plaintiff-Appellant,

v.

FIRST MISSOURI BANK OF
GASCONADE COUNTY,
Defendant-Respondent.

No. 50695.

Missouri Court of Appeals,
Eastern District,
Division Three.

Jan. 6, 1987.

Thomas H. Hearne, Salem, Mark Fausmussen, St. Louis, for plaintiff-appellant.

P. Dennis Barks, Hermann, for defendant-respondent.

PUDLOWSKI, Presiding Judge.

This appeal arises from a judgment non obstante veredicto entered in favor of respondent, First Missouri Bank of Gasconade County and against plaintiff/appellant Mary Rose Stegeman, after the jury had returned a verdict for appellant assessing $20,000 (Twenty Thousand Dollars) in actual damages.

Appellant's second amended petition named as defendants R.J. (Raymond J.) and Shirley Pribek, First Missouri Banks Incorporated and Gasc-Osage Realty Company Incorporated, as well as respondent. Count one of appellant's petition was against Gasc-Osage Realty alone and alleged a cause of action for conversion. Counts two through five were alternative counts against the Pribeks, First Missouri Banks Incorporated and respondent bank, which was allegedly owned and controlled by First Missouri Banks Incorporated. Count two alleged a cause of action for conversion against these defendants. Count three rested on count two and alleged a conspiracy to convert funds belonging to appellant. Count four alleged a cause of action for outrageous conduct and count five alleged the commission of a prima facie tort against appellant.

The Pribeks, First Missouri Banks Incorporated and respondent all made oral motions to have all four of the counts against them dismissed. The motion was sustained with regard to counts two, three and four and those counts were dismissed. First Missouri Banks Incorporated was also dismissed with regard to count five, the count alleging a prima facie tort action. Therefore, when the case reached trial, appellant was left with count one against Gasc-Osage Realty Company alleging conversion, and

count five against the First Missouri Bank of Gasconade County and the Pribeks, alleging a prima facie tort. After appellant's opening statement, the trial court directed a verdict against appellant with regard to punitive damages on count five.

On count one, the jury found that Gasc-Osage had indeed converted funds belonging to the appellant. The jury returned a verdict for both $2,022.84 (Two Thousand Twenty-two Dollars and eighty-four cents) in actual damages and $10,000 (Ten Thousand Dollars) in punitive damages on count one. Prior to submitting her case to the jury, appellant dropped the Pribeks as defendants in count five and submitted on that count only against the respondent. As noted above, the jury returned a verdict for $20,000 (Twenty Thousand Dollars) against respondent, however, the latter verdict was overturned by the entry of the judgment n.o.v.

Gasc-Osage Realty has not appealed the judgment below and the only parties before this court are appellant and respondent bank.

On appeal, appellant alleges trial court error in declaring judgment notwithstanding the verdict, in directing a verdict on the issue of respondent's liability for punitive damages, and alternatively in dismissing her counts two, three, and four as they applied to respondent. We find no error.

The events that gave rise to this litigation began in July of 1979 when appellant purchased a small piece of property in Gasconade County, Missouri. Appellant paid $2,000 (Two Thousand Dollars) down and borrowed the remaining $1,600 (Sixteen Hundred Dollars) needed for the purchase from Gasc-Osage Realty, Inc., which took a deed of trust to secure the promissory note evidencing the loan. The loan was to be repaid with ten percent interest at the rate of forty dollars a week. If appellant prepaid the loan at any time, she was to receive a cash discount.

Raymond J. Pribek was an employee of Gasc-Osage Realty. He and his wife, Shirley Pribek, had their home loan, as well as other loans with respondent. The home

loan as well as some of the other loans were under collateralized; meaning that the bank did not have enough collateral to sell in order to recover the amounts owed if the Pribeks were unable to meet their obligations. In 1979, at approximately the same time that Gasc-Osage made the loan to appellant, respondent demanded additional collateral to secure its loans to the Pribeks. Raymond Pribek requested help in securing the additional collateral needed from his employer George R. Hoesch who was the principal shareholder and president of Gasc-Osage Realty.

According to the testimony at trial, Hoesch had a policy of paying sales people such as Pribek a $5,000 (Five Thousand Dollar) bonus when they sold fifty lots and a .$10,000 (Ten Thousand Dollar) bonus when they had sold a hundred. Raymond Pribek was not owed these bonuses at the time of respondent's demand. However, Hoesch agreed that he would probably eventually be entitled to the $15,000 (Fifteen Thousand Dollars) if he stayed with the company. Hoesch on behalf of Gasc-Osage thus agreed to assign approximately that amount in promissory notes, including appellant's note, to Pribek who then assigned the notes to respondent as collateral. Hoesch, again acting on behalf of Gasc-Osage agreed to replace any of the promissory notes that were defaulted on with substitute notes.

After the assignment of the notes, their makers, including appellant, were informed that the notes had been assigned to Pribek, and all future payments were to be made to him. When appellant received this notice, instead of proceeding to make her payments to Pribek, she contacted Gasc-Osage and asked if she could prepay the note. Gasc-Osage agreed and a cash discount amount of $1,343.43 (One Thousand Three Hundred and Forty-three Dollars and forty-three cents) was determined to be equal to payment in full. That amount was paid on October 30, 1979.

At that point, however, Gasc-Osage did not forward the money to respondent or attempt to have the note cancelled and

returned to appellant. The money was instead simply spent by Hoesch and Gasc-Osage, and this was the basis for the verdict for appellant on count one of her petition, on which judgment was entered. However, Pribek knew about the payment and he notified respondent of it in 1979, requesting that respondent seek a replacement note from Hoesch and Gasc-Osage.

Respondent did not, however, release the note and request a replacement as per its agreement with Gasc-Osage. Instead respondent continued to hold the note.

On September 11, 1981, almost two years after the events described above, an attorney acting on behalf of both the Pribeks and respondent demanded payment of the note plus interest and attorney's fees. On November 13, 1981, a second such letter was sent. Both letters mentioned the possibility of foreclosure if appellant refused to pay. When appellant still failed to pay the money owed on the note, foreclosure proceedings were begun. Appellant was able to obtain a temporary restraining order to stop the first foreclosure sale. Thereafter, though, the restraining order was dissolved.

In July of 1982, appellant received a new notice of the fact that her deed of trust was to be the subject of a foreclosure. At that time, in order to prevent the sale, appellant paid $2,450 (Two Thousand Four Hundred and Fifty Dollars) to Pribek, who was then the holder of the note. That amount covered principal, interest and attorney's fees until the date of payment. The note and deed of trust were then released to appellant.

Appellant admitted at trial that respondent had never attempted to collect more from her than the balance due on the note plus interest and attorney's fees provided for by the note. She also admitted that the note was technically in default at the time when demand was made upon her.

■ The granting of a defendant's motion for judgment notwithstanding the verdict is proper only if this motion identifies one or more elements of plaintiff's case which are not supported by the evidence. *See, Goodenough v. Deaconess Hospital,* 637 S.W.2d 123, 125 (Mo.App.1982); and *Stix Friedman & Company v. Fidelity & Deposit Company,* 563 S.W.2d 517, 521 (Mo.App.1978).

■ The elements of a prima facie tort are: (1) an intentional lawful act by defendant; (2) an intent to cause injury to the plaintiff; (3) an injury to the plaintiff; and (4) the absence of sufficient justification for the act. The elements were originally set out fairly recently in *Porter v. Crawford and Company,* 611 S.W.2d 265 (Mo.App.1980), which first recognized the existence of the prima facie tort doctrine in Missouri. *See also, Dowd v. General Motors Acceptance Corporation,* 685 S.W.2d 868, 872 (Mo.App.1984).

As part of the requirement that the defendant's act have been lawful, Missouri law requires that the act not fall under any nominative tort. Therefore if respondent's acts constituted any of the nominative torts in counts two, three, and four of appellant's petition, or any other nominative tort that was not pled, then as a matter of law there could have been no prejudicial error in the entry of the judgment n.o.v. because appellant would have failed to make a submissible case on a prima facie tort theory. *See, Bandag of Springfield, Inc. v. Bandag, Inc.,* 662 S.W.2d 546 (Mo.App.1983). We will thus examine first appellant's claim that the trial court erred in dismissing counts two through four of appellant's petition with regard to respondent.

Count two alleged that the named defendants, including respondent, had converted the funds received from appellant to prevent the foreclosure in 1982. There was no question but that at the time appellant "prepaid" Gasc-Osage, Gasc-Osage no longer held the note and appellant had been so informed. The elements of a conversion action are identified in *Jordan v. Ebert,* 387 S.W.2d 255, 257 (Mo.App.1965) as follows: (1) plaintiff's possession or right to possession at the time of the alleged conversion or an ownership right which carries with it the right to immediate possession;

(2) the taking of plaintiff's property against his will and in open defiance of his right of possession; and (3) damages resulting from the taking.

If when the 1982 payment was made, appellant did not possess the note and it was lawfully held by either Pribek or respondent, and the funds received from appellant went to the lawful holder of the note and were used to pay amounts due under it, then respondent was not a converter.

Appellant alleged, however, that there was an agreement between the Pribeks, Hoesch, Gasc-Osage Realty, and respondent which *required*, as opposed to allowed, respondent or the Pribeks to return any note in default and obtain a substitute note from Gasc-Osage rather than attempting to collect on the defaulted note. The petition also goes on to claim that therefore once the weekly amount specified by the language of the note ceased to be paid, neither respondent nor the Pribeks had a lawful right to hold the note or receive payment thereon. According to the theory stated in count two of the second amended petition, they were required to have returned the note to Gasc-Osage in return for the assignment of a substitute note.

■ Nowhere in appellant's petition, however, does she allege that she was in privity with a party to the contract or that she was a third-party beneficiary of the agreement, such that she had the power to enforce the agreement. The only case that appellant cites this court to with regard to her theory that she had the right to enforce the agreement is *Westerhold v. Carroll*, 419 S.W.2d 73 (Mo.1967). In that case, the Missouri Supreme Court stated:

> The determination whether in a specific case the defendant will be held liable to a third person not in privity is a matter of policy and involves the balancing of various factors among which are the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to defendant's conduct, and the policy of preventing future harm.

*Westerhold, supra* at 81.

Certainly the agreement was not entered into to protect appellant from a payment demand being made on her and foreclosure proceedings being held. Had appellant been able to prove the existence of the alleged agreement, she would still have failed to demonstrate that the agreement was intended to benefit her, because it dealt only with who could proceed to collect on the note, if a default occurred, not with whether collection would be possible and not with any limitations on the means of collection.

There was also no harm to appellant which was foreseeable from the agreement and none is alleged. There is also nothing to tie the existence of any such agreement to any injury suffered by appellant.

Finally, we reach the issue of whether the moral blame attached to defendant's conduct is such that there is a public policy reason for allowing appellant to enforce the agreement. The key issue here is if the alleged agreement existed, was respondent's conduct in breaching it and proceeding to collect on the note, rather than turning it over to Gasc-Osage for collection, morally reprehensible? We cannot find that it was.

We therefore conclude that even if the agreement alleged in count two of appellant's petition existed, appellant had no standing to have it enforced. Therefore, a careful examination of count two of appellant's petition indicate that it fails to state a cause of action and was thus properly dismissed.

We also note that appellant was clearly obligated to pay the amount due on the note once. Since the note was only paid twice, there can only be one conversion. Thus, if the theory alleged under count two of appellant's petition were to succeed, the verdict against Gasc-Osage on count one would have to be reversed.

Count three alleges that the defendants named therein, including respondent, conspired to commit conversion. Since there can be no conspiracy to commit a tort unless the tort itself was committed, this count was also properly dismissed against respondent.

We next consider appellant's count four which alleges that the acts of respondent, as well as those of the other named defendants, constituted the tort of outrageous conduct. In order to state a cause of action for outrageous conduct, a plaintiff must allege that the defendant by extreme and outrageous conduct, beyond all bounds of decency intentionally or recklessly "caused severe emotional distress to the plaintiff from which bodily harm result[ed]." *Leonard v. Pioneer Finance Company,* 568 S.W.2d 937, 940 (Mo.App. 1978).

Here, even if it could be said that respondent's conduct in attempting to collect on the note, despite its knowledge that appellant had paid Gasc-Osage, was outrageous or beyond the bounds of decency, appellant's cause of action was properly dismissed because appellant failed to plead any bodily harm resulting from the conduct.

Our own research has also failed to uncover any nominative tort recognized in Missouri law which appellant might have pleaded against respondent. Therefore, if appellant had a cause of action against respondent, the action was one for prima facie tort.

The record indicates that appellant made a submissible case on the first and third elements of the cause of action for prima facie tort: (1) an intentional lawful act was committed and (3) that act caused injury to the appellant. Respondent using lawful means sought to collect on a note that had been assigned to it as collateral on a loan and that caused appellant some emotional upset and meant that she was forced to give up some $2,450 (Two Thousand Four Hundred and Fifty Dollars) to prevent a foreclosure sale on her property. However, the evidence from the respondent's president indicated that respondent had proceeded as it had to protect itself from a possible default by the Pribeks and to protect the Pribeks, but that there had been no intent to injure appellant. In fact nowhere in the record is there any indication of an intent to injure appellant. Appellant also failed to present evidence that there was no adequate justification for respondent's actions.

Gasc-Osage had not offered a note in substitution for appellant's after appellant attempted to prepay Gasc-Osage. The statute of limitations was running on respondent's cause of action on the note and respondent used lawful collection procedures. Nothing in the evidence indicates that respondent was responsible for the fact that appellant had made her "prepayment" to the wrong entity. Respondent and/or the Pribeks held the note and in the absence of evidence of a reason to the contrary, the holders of a note have the right to make lawful attempts at collection. This is true even where the holder or holders of the note are aware that due to a misunderstanding on the maker's part someone else has been paid the amount due under the note.

Therefore, appellant failed to make a submissible case against respondent under the prima facie tort doctrine and the trial court was correct in granting respondent's motion for judgment notwithstanding the verdict. Since, no submissible case was made, there was no prejudicial error in the trial court's action in directing a verdict against appellant with regard to her request for punitive damages against appellant.

Judgment affirmed.

CRANDALL and KAROHL, JJ., concur.