J.D. WILLIAMS, Plaintiff–Appellant,

v.

Thaine Q. BLUMER,
Defendant–Respondent,

and

Theodore Collier, Defendant.

No. WD 40671.

Missouri Court of Appeals,
Western District.

Nov. 22, 1988.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Dec. 27, 1988.

Application to Transfer Denied
Feb. 14, 1989.

Robert L. Shirkey, James M. Sloan, Kansas City, for plaintiff-appellant.

William A. Lynch, Peter T. Niosi, Kansas City, for defendant-respondent.

Before LOWENSTEIN, P.J., and TURNAGE and COVINGTON, JJ.

LOWENSTEIN, Presiding Judge.

The plaintiff Williams brought this suit against Collier and his attorney Blumer claiming the conversion of a special trust self-insurance fund in which Williams claimed an interest. The plaintiff also contended that the defendants' taking of the funds also gave rise to a cause for: tortious interference with plaintiff's business and outrageous conduct that amounted to wrongful garnishment. Williams obtained a default judgment against Collier who is not a party to this appeal.

This controversy has spawned two appeals to this court. Williams was the majority stockholder in Consolidated Cab Co., Inc. Collier was an employee of that company. Throughout Collier's employment money was deducted from his wages as contribution to a group health insurance plan. While Collier was working for Consolidated he became ill and required hospitalization. It was determined his health insurance had lapsed because of nonpayment of premiums. Collier sued Williams and Consolidated for fraud and obtained a default judgment against both in January, 1974, in the sum of $37,546.00.

Prior to the time of that judgment, Williams had $20,000.00 deposited as a special trust fund in the then Traders National Bank in accordance with the Taxicab Ordinance of Kansas City, Missouri. Under § 33.67 of the Ordinances this money was to be used to pay any damages which might result from the negligent operation of Consolidated's taxi cabs. In essence, the city ordinance allowed taxi companies to self-insure but they had to provide this fund to pay damages.

In order to satisfy the default judgment against Williams and Consolidated, Blumer, as attorney for Collier, initiated a garnishment proceeding in an attempt to gain access to the funds held by the bank. Williams, and the City of Kansas City, Missouri, as intervenor, asserted that the $20,000.00 self-insurance fund was not subject to the claim of a general creditor. The court ruled in favor of Collier and ordered that the money be paid into the court's registry. Williams and the city appealed that decision. Blumer applied to the circuit court for an order to disburse the funds held in the registry of the court. While that appeal was pending, and without notice to the adverse parties, the court ordered the funds paid to Blumer and his client. On that same date, Blumer obtained a check from the court payable jointly to himself and Collier for the sum of $19,289.42. This court later issued an opinion holding that the deposited funds were

restricted for a special purpose and not subject to garnishment by a general creditor. The cause was reversed with directions to the trial court to enter judgment in favor of Williams and the city. On December 19, 1979, the mandate issued on that decision. That case, referred to as "Collier I" is reported as *Collier v. Consolidated Cab Co., Inc.,* 591 S.W.2d 391, 404 (Mo.App.1979).

After *Collier I,* Williams (not the cab company) and the city filed for an "Order of Restitution" to get the money back. The trial court granted that order on September 3, 1980, and as amended on October 2, 1980. Collier and Blumer were directed to repay the money, plus interest to the court administrator. This prompted an appeal prosecuted by Blumer but not by his client Collier, *Collier v. Williams,* 625 S.W. 2d 634, 636 (Mo.App.1981) ("Collier II").

The *Collier II* ruling dismissed that appeal. Judge Clark, writing for the court, was critical of the record on appeal. Exception was taken to the fact that many important decisions in the restitution action were done *ex parte. Collier II* noted the trial court should not have released the funds to Blumer, because it had notice that an appeal had been perfected. The September 3, 1980 order, entered without notice or hearing, merely compounded the error. That order, the opinion recited, failed to recognize that Blumer was not a party to the case and had no notice of the proceeding. This led to the further question of standing a nonparty, Blumer, to prosecute the appeal. 625 S.W.2d at 637. Additionally, *Collier II* noted the failure of the order to provide for the interests of Kansas City and the court's administrator. The order was held to be interlocutory and not subject to appeal, because the record was incomplete and further proceedings were required. *Collier II, supra* at 637.

It is out of this total morass that the present appeal emerges. The cast of characters involved in this case now includes only Williams (the owner of the cab corporation) and Blumer (the attorney of the driver who obtained a default judgment in 1974). What, if anything, transpired as to

the restitution action after the dismissal of the appeal in *Collier II* is not known. What is known is that Williams filed the petition in this suit on December 19, 1984.

The trial court granted a motion for summary judgment in favor of Blumer. The court held that the statute of limitations had run on all four claims. Additionally, the court noted that the motion for summary judgment on the outrageous conduct count was also appropriate because plaintiff failed to plead an essential element of that claim; namely, that a bodily injury resulted from the conduct. The court further concluded the conversion suit would not lie because the plaintiff was not entitled to possess the funds in dispute.

### I.

The trial court's initial reason for granting summary judgment for Blumer on all counts of the petition (conversion, tortious interference, outrageous conduct and wrongful garnishment) was because the December 19, 1984 petition came after the applicable five year statute of limitations had run. A chronology of pertinent events is as follows:

January 31, 1978  Williams and Consolidated appeal ruling that the Traders account could satisfy Collier's judgment.

September 6, 1978  Letter from Kansas City taxi administrator to Williams to stop operating a taxi service because the $20,000.00 deposit was gone.

October 5, 1978  Circuit court authorizes Traders account now in registry of court to be disbursed to Collier and Blumer, and money is withdrawn.

December 3, 1979  Opinion in Collier I holding garnishment of Traders account was in error.

December 19, 1979  Mandate issued in Collier I.

September–October 1980  Circuit court order of restitution directed to Collier and Blumer to repay the money to the court administrator.

December 19, 1984  The petition in the present suit is filed.

The sole issue on the first point of appeal is as follows: when does the clock begin to run, for statute of limitations purposes, to a party who suffers an adverse ruling in a court tried case, but who is successful on appeal and the appellate court decision creates a cause of action for that party?

The trial court in its ruling for Blumer relied on language from *D.E.J. v. G.H.B.*, 631 S.W.2d 113 (Mo.App.1982), and *State ex rel. Kansas City v. Public Service Commission*, 228 S.W.2d 738, 741 (Mo.1950), both to the effect the appeals *opinion* and not the issuance of the *mandate* operates as the judgment of the court. If, as Williams urges, the date of the mandate controls, his petition was filed, as calculated under Rule 44.01(a), on the last day possible. The pertinent holding in *D.E.J., supra,* involved the timeliness of application for a change of judge under Rule 51.05. That case was a parental rights termination judgment that came for review to this court. It was reversed and remanded because of a lack of factual findings by the trial court under the statute. The opinion stated the remand was for the recitation of such findings—not for a new trial. On remand the mother sought a change of judge on the theory the mandate stated only that the judgment was reversed and was, "remanded with directions for further proceedings in conformity with the opinion ..." *D.E.J.,* 631 S.W.2d at 117–18. This court held the mother had not received a new trial. Instead she partook in a proceeding to make necessary determinations absent earlier, and a motion for change of judge was improper. Within that context this court used the following language relied on by the trial court on the limitations issue in the case at bar:

> The mandate, however, is not the judgment; the appeals opinion is the judgment. *Argeropoulos v. Kansas City Rys. Co.,* 201 Mo.App. 287, 212 S.W. 369, 372[1–3] (1919). The mandate merely constitutes the official communication of the appellate judgment to the subordinate court. *McClellan v. Highland Sales and Investment Co.,* 514 S.W.2d 371, 374[1–4] (Mo.App.1974).

*D.E.J.,* 631 S.W.2d at 117. *Accord Moore v. Beck,* 730 S.W.2d 538, 540 (Mo. banc 1987).

*State ex rel Kansas City, supra,* 228 S.W.2d 738, contains similar language to that of *D.E.J.* (mandate serves to communicate or notify the trial court of a judgment), but that case is also inapplicable to the issue here. The issue in that case involved a second order of the Public Service Commission following an appeal to the circuit court. *Id.* 739–41.

A traditional point for commencing the time to start running on a cause of action is notice or knowledge of the existence of a claim; which would make the date of the opinion the logical date to start the time running on the statute of limitations. The problem with using the opinion date as a milestone is that the opinion is not necessarily the last significant event in the appellate process. The opinion can be modified between the time of handdown and the issuing of the mandate. Motions for rehearing can result in changes in outcome or opinion language.

Where a cause of action is created by a reversal on appeal, the preferable starting point for the beginning point on the limitation period is the filing of the mandate. Although the Collier I opinion gave notice to a party of a cause of action, the date of the mandate carries a note of finality. Compelling toward this selection, as between two rather arbitrary times, is the reasoning in *Pickel v. Pickel,* 251 Mo. 197, 158 S.W. 8, 12 (1913), in which the point of the finality of the mandate is stressed:

> The great weight of authority is that no proceeding can be had, in the absence of waiver, controlling statute or exceptional circumstances until the mandate has been filed ... Whatever may be said as to the possible effect of defendants' filing the bond after the opinion was filed in this court and before the mandate was filed in the trial court, there is ample authority for the conclusion that he was not required to act affirmatively, in the circumstances of this case, until the mandate reached the court below.

*Pickel* further held that until the mandate is filed "the trial court is not and cannot be required to proceed, and, ... time granted by the judgment affected by the appeal cannot be said to begin to run until the party against whom it runs is vested ... with the *right* to act in the premises." *Id.* This theme was echoed in *Scheer v. Trust Co. of St. Louis*, 330 Mo. 149, 49 S.W.2d 135, 140–41 (Mo.1932), where a trustee's sale was set aside on a second appeal. The court stated that it did not make any difference whether the date of issuance of the mandate or the date the trial court received the mandate was used, the mandate "definately determined" the date a party knew "a suit for recovery could be instituted and maintained." *Id.* 140–41. *Accord Bailey v. Henslee*, 309 F.2d 840, 844 (8th Cir.1962) (until the issuance of the mandate, the opinion is subject to withdrawal or change, and time for compliance with matters dictated in opinion did not start to run until the filing of the mandate); *Borrow v. El Dorado Lodge*, 75 Ariz. 218, 254 P.2d 1027 (1953) (appellate court's judgment becomes effective on the date the mandate is issued); *Morgan v. Williams*, 85 Fla. 219, 95 So. 611 (1923) (receipt of the mandate for filing in the circuit court begins the clock running for statute of limitations purposes for paying the amounts adjudged in a degree for redeeming land). *But cf. John F. Grant Lumber Co. v. Bell*, 302 S.W.2d 714 (Tex.Civ.App.1957).

■ The prima facie elements to establish wrongful interference with a business relationship under Missouri law are: existence of a valid business relationship; knowledge of the relationship or expectancy on the part of the defendant; an intentional interference inducing or causing a breach or termination of the relationship or expectancy; the absence of justification; and resultant damages to the party whose relationship or expectancy has been disrupted. *National Advertising Co. v. Herold*, 735 S.W.2d 74, 79 (Mo.App.1987) (*emphasis added*).

There could have been no suit for wrongful interference with a business relationship until the appeals decision in Collier I, because there was a valid justification for taking the funds which were originally deposited with Traders National Bank. As for the outrageous conduct claim, the statute of limitations also began to run as of the filing of the mandate.

Because the date of the mandate is ruled as controlling here, the judgment of the trial court using the opinion date is an error of law and summary judgment on all four counts based on the statute of limitations is reversed.

## II.

■ The court's order for summary judgment also rested on the fact that Williams was not entitled to the possession of the funds on deposit at Traders National Bank at the time of the garnishment or at the time he knew of the wrongfulness thereof. The court concluded the plaintiff's right to possess the funds was an indispensable element of a conversion suit. Having just determined Williams' right to have the funds reinstated accrued only upon the issuing of the mandate in *Collier I*—the question remains as to whether his possessory right in those funds is now sufficient enough to maintain a suit for conversion?

The trial court correctly cited *Centerre Bank Nat. Ass'n. v. Missouri Farmers Association, Inc.*, 716 S.W.2d 336, 341 (Mo. App.1986), for the proposition that before a plaintiff can recover for conversion he must establish that "he was the owner of or had the right to possession of the property alleged to have been converted." *Id.* (citation omitted). The phrase "right to possession" has been construed to mean right to immediate possession at time of conversion or when suit was brought. *Mickelson v. Airmen, Inc.*, 712 S.W.2d 714 (Mo.App.1986).

In reviewing a ruling for summary judgment, the Supreme Court of Missouri has held that an:

"appellate court must scrutinize the record in the light most favorable to the party against whom the motion was filed, according to that party all reasonable inferences which may be drawn from the

evidence ... The burden is on the party moving for summary judgment to demonstrate that there is no genuine issue of fact. A genuine issue of fact exists when there is the slightest doubt about a fact.

*Gast v. Ebert*, 739 S.W.2d 545 (Mo.banc 1987) (citations omitted). *See also* Rule 74.04.

■ This court in *Collier I* held the funds deposited in Traders National Bank were for a special purpose. Conversion may lie as to funds placed in the custody of another for a specific purpose and their diversion for other than the specified purpose. *Emerick v. Mutual Ben. Life Ins. Co.*, 756 S.W.2d 513, 523 (Mo. banc 1988). That type of deposit is defined as: "A delivery of money or property to a bank for application to a particular specific purpose is not a general deposit, nor is it, strictly speaking a 'special' deposit as that term is usually employed, but ordinarily it partakes of the nature of a special deposit in that title to the thing remains in the depositor and the bank becomes an agent, bailee, or trustee and the bank becomes debtor." 9 C.J.S. Banks and Banking § 275 (1938) at 570.

The account at Traders was designated as an individual one. The interest on the account was to be paid to Williams. The savings account ledger card for that account carried on its face the following:

> This account represents self insurance for the Consolidated Cab Co. and may not be disposed of in any way without written agreement from the Commissioner of Revenue of K.C., Mo., J.D. Williams–Consolidated Cab Co.

The funds would only be released to Williams according to the dictates of the city Ordinance Article IV, § 33.71.

> In case an applicant or holder of a permit after making a deposit of cash or government obligations, as provided in section 33.62 and section 33.37, shall discontinue the operation of taxicabs and retire from the taxicab business in the city, or in case he shall, with the consent of the administrator, substitute in lieu of said agreement a bond in accordance with sec-

tion 33.65 or a policy or certificate of liability insurance in accordance with sections 33.65 or a policy or certificate of liability insurance in accordance with sections 33.63 and 33.64, an appraisal shall thereupon be made by the administrator and said applicant or holder of permit, of all outstanding and unpaid claims pending against such person, and a sufficient amount of such cash or government obligations so deposited shall be obtained by the depository as, in the reasonable discretion of the administrator, shall be reasonably sufficient to guarantee payment of such claims. The balance of such deposit shall thereupon be returned to the person making such deposit by said depository, upon the order of the administrator, and thereafter the balance of such fund shall, from time to time as claims are reduced, be returned by said depository to the person making such deposit on the order of the administrator, in proportion to the amount that it shall be shown to said administrator that such claims have been paid, or satisfied, or have been reduced, dropped or abandoned. In case of dispute over such appraisal between the person making such deposit and the administrator, the dispute shall be informally submitted for arbitration to the then assigned judge of the circuit court of the county, in the city, and the decision of such judge thereon shall be final and binding upon all parties.

In response to defendant Blumer's request for admissions, Williams admitted that on January 5, 1984, at a hearing conducted by the transportation department he claimed to still be running taxicabs in Kansas City, Missouri on a self-insured basis. Williams also admitted that as of May, 1984 he was still operating cabs in Kansas City. Additionally, Williams admitted that there were several outstanding judgments against him and Consolidated besides that of Collier. It is unclear from the record whether these judgment creditors could satisfy their claims from the special fund (if it were restored). It is also unclear from the record whether Williams was still

operating taxicabs on the day the present suit was filed. If Williams is operating cabs then it must be determined whether the city would release any part of the special fund (if the money is returned).

In *Hamiltonian Federal Sav. & Loan Ass'n v. Reliance Ins. Co.*, 527 S.W.2d 440 (Mo.App.1975), this court found that a trial court which denied a summary judgment could not be faulted for seeking all the facts which might reasonably be considered in arriving at its final judgment. In the present instance the trial court did not have all the facts before granting a summary judgment on the conversion issue.

On remand it should be determined whether Williams was still operating cabs in Kansas City at the time the present suit was filed and that because of that conduct the city would not release money held by it for self-insurance purposes. Then summary judgment would then be appropriate. It should also be determined whether the aggregate amount of money owed to judgment creditors who could benefit from the special fund exceeded the amount on deposit. On remand the court should make a determination of whether any money recovered should be returned to the fund or to Williams personally. The present record is not sufficient to make a determination of whether Williams had a possessory interest at the time of the alleged conversion. But the necessary information required for a summary judgment cannot be gleaned from the present record and therefore the trial court's ruling must be reversed.

### III.

■ The trial court correctly sustained defendant Blumer's motion for summary judgment on plaintiff's outrageous conduct claim. The trial court found that Williams failed to plead an essential element of that claim. In order to state a cause of action for outrageous conduct, "a plaintiff must allege that the defendant by extreme and outrageous conduct, beyond all bounds of decency intentionally or recklessly 'caused severe emotional distress to the plaintiff *from which bodily harm result[ed].*' " *Stegman v. First Missouri Bank of Gasco-*

*nade County*, 722 S.W.2d 349, 354 (Mo. App.1987) (*citing Leonard v. Pioneer Finance Co.*, 568 S.W.2d 937, 940 (Mo.App. 1978) (emphasis added). *See also Frye v. CBS Inc.*, 671 S.W.2d 316 (Mo.App.1984) (required severe emotional distress from which bodily harm results).

Appellant Williams contends *Stegman* is not good law. He contends the *Stegman* court's reliance on *Leonard* was inappropriate, because that case predated the supreme court's decision in *Bass v. Nooney Co.*, 646 S.W.2d 765 (Mo. banc 1983).

In *Bass* the supreme court abandoned the old impact rule for recovery of damages for negligent infliction of emotional distress. Under the impact rule a defendant was not liable for negligence resulting in emotional distress unless the plaintiff suffered a contemporaneous traumatic physical injury, *see, e.g., Connell v. Western Union Tel. Co.*, 116 Mo. 34, 22 S.W. 345 (1893); *Weissman v. Wells*, 306 Mo. 82, 267 S.W. 400 (1924).

The appellant's theory is that holding in *Bass* eliminating the impact rule is applicable to outrageous conduct claims. This court believes that the appellant interprets *Bass* too broadly. Thus, the motion for summary judgment on the outrageous conduct claim is sustained because the plaintiff failed to plead a contemporaneous traumatic injury.

The portion of the judgment granting summary judgment on the outrageous conduct count is affirmed. The remainder of the judgment is reversed and remanded for trial. The costs are to be equally divided.